IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                         CR 18-3499 MV

MANUEL RAMOS-CASTILLO,

    Defendant.

## **MEMORANDUM OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION OF DETENTION ORDER**

THIS MATTER is before the Court on Defendant's Motion for Reconsideration of Detention Order *(Doc. 11).* The Court held an evidentiary hearing on November 13, 2018 at which Defendant was represented by retained counsel Erlinda O. Johnson, and the Government was represented by AUSA Kristopher N. Houghton. At that time, the Court heard the testimony of Defendant's witnesses – Rogelio Garcia, Alberto Orozco, Gerardo ("Gary") Sanchez, and Crystal Bustamante – and the Government's witness, DEA Special Agent C. Godier. The Court has also given due consideration to the parties' original briefs and requested supplemental briefing, the submitted exhibits, and relevant authorities. For the reasons set forth below, the Court finds that the United States has met its burden of demonstrating that there are no combination of conditions for release that would reasonably assure Defendant's appearance at future court proceedings and the safety of the community.

The Bail Reform Act of 1984 provides that a court may detain a defendant pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f). The United

States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-convincing evidence. *See* 18 U.S.C. § 3142(f); *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f).

In assessing whether pretrial detention is warranted, the judicial officer must consider the statutory factors set forth in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. The Court remains mindful that the factors set forth in 18 U.S.C. § 3142(g) "shall not be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). As Defendant notes, "the Bail Reform Act reaffirms the guarantee of the presumption of innocence pretrial." *United States v. Lizardi-Maldonado*, 275 F. Supp.3d 1284 (D. Utah 2017).

With certain charges, such as the drug trafficking charge against this defendant, a rebuttable presumption arises that the defendant is a flight risk and a danger to the community. *See* 18 U.S.C. § 3142(e)(3*)*.[1]

---

[1] The presumption arises only if there has been a probable cause determination by the court or a grand jury that the accused committed one of the offenses listed in 18 U.S.C. § 3142(e)(3)(a)-(e). Here, the presumption arises because the instant Indictment *(Doc. 20)* charges Defendant with a violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(A) – a drug offense "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46." 18 U.S.C. § 3142(e)(3)(A).

> Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced. Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.

*United States v. Stricklin*, 932 F.2d 1353, 1354–55 (10th Cir. 1991). *Doc. 30* at 2. It is against this framework that the Court now addresses those statutory factors.

**(1) The nature and circumstances of the offense charged**

Defendant was initially charged in a criminal complaint with Possession with Intent to Distribute 100 grams and more of heroin in violation of 18 U.S.C. § 841(a)(1) and § 841(b)(1)(B), *(Doc. 1),* which carried a statutory penalty of a mandatory minimum term of 5 years of incarceration with a maximum of 40 years. On October 23, 2018, the Grand Jury returned an indictment alleging the same charge but alleging an (A) Level based upon an amount of 1 kilogram which increased the statutory penalties upon conviction to a mandatory minimum sentence of 10 years incarceration all the way up to life imprisonment. *Doc. 21.*

To be sentenced upon conviction to less than the mandatory minimum term of imprisonment, Defendant would need to meet the five requirements of the so-called "safety valve provision." 18 U.S.C. § 3553(f). These requirements include that the offense not result in death or serious bodily injury to any person, and that the defendant: (1) have no more than one criminal history point; (2) have not used violence or a dangerous weapon in connection with the offense; (3) not have been an organizer or leader of the drug enterprise; and (4) provide the government with a truthful debrief. As discussed later, the Government has indicated its belief that if convicted, Defendant

3

may not meet the second and third requirements for relief from the mandatory minimum sentence of 10 years of incarceration. Clearly, Defendant faces serious consequences if convicted.

### (2) The weight of the evidence against the person

A federal search warrant was executed on Plaintiff's home in Hernandez, New Mexico. Within that home, law enforcement located evidence consistent with drug trafficking activity – digital scales, a vacuum sealer machine and associated rolls of bags for sealing, a money counter machine, notebooks containing suspected drug ledgers, and $17,000 cash hidden in a cowboy boot in the closet. Two lawfully purchased firearms were also located during the search – a rifle in the master bedroom closet and a pistol in Defendant's vehicle. Most importantly, Defendant led officers to an adjacent large chicken coop that was not within the area for which a search was authorized. Defendant then pointed out to officers where a kilogram of heroin wrapped in red duct tape was hidden in a cooler buried under the coop floor beneath two cages holding roosters.

Defendant also made incriminating statements. Indeed, he admitted that for more than 3 months, he had received from Mexico kilogram-size quantities of heroin for about $20,000 and sold them in the Espanola Valley area with thousands of dollars in profit. He acknowledged holding a white Lexus vehicle as collateral for a drug debt. He identified a cellular phone as the one he used in conducting sales of heroin. A search of that phone revealed only 7 listed contacts, 2 of which had Mexican phone numbers. Text messages consistent with drug trafficking indicate not only sales of illegal drugs but

an assertion in an August 22, 2018 message that he had directed his supplier "to make sure that what they send me is good that I dont want shit that dont work. . . ."

Defendant argues that the evidence against him "can only be relied on by the court to determine whether the evidence demonstrates Mr. Ramos' dangerousness, not to determine whether Mr. Ramos is guilty and would be convicted and sentenced for the charged offense." *Doc. 30* at 5 (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). This Court agrees that it is not appropriate at this stage to assess Defendant's guilt based upon the evidence presented at the detention hearing. However, the Court disagrees that it is precluded from using that evidence to evaluate the likelihood that a defendant will be convicted. Indeed, the *Hazime* court explained that the weight of the evidence should be used to "determine[e] whether there are conditions which will assure the appearance of the accused and safety of the community." *Id.*

Common sense dictates that the more likely that a conviction will occur, the more incentive a defendant will have to flee. Defendant implicitly recognizes this proposition when he urges this Court to consider the viability of the "robust motion to suppress evidence" he intends to file. Defendant denies that he is "asking the Court to evaluate the strength of a motion to suppress evidence" and raises that issue "merely as a subset for the court to consider when evaluating the strength of the evidence factor." *Doc. 30* at 8. Yet the only true relevance of a motion to suppress lies in its potential to diminish the prosecution's ability to obtain a conviction. Therefore, the Court respectfully disagrees that "[t]he likelihood of conviction by itself has no bearing on the pretrial release decision." *Lizardi-Maldonado*, 275 F. Supp.3d at 1292.

The Court has listened to the Government's audio recordings of the officers' interactions with Defendant at the time the search warrant was executed and has considered the photographs admitted at the hearing. Of course, it will be up to Judge Vazquez to ultimately rule on any motion to suppress, but this Court's review found nothing in the photos or recordings that would require suppression of Defendant's statements or the seized heroin. Yet the heroin was located in an area beyond that authorized by the search warrant, so the possibility of a successful suppression motion remains a consideration as to the strength of the evidence factor.

Common sense also demonstrates that the severity of the sentence that a defendant will likely face if convicted is relevant to the risk of flight inquiry. Where, as here, the charge implicates a mandatory minimum sentence of imprisonment, a defendant's potential eligibility for relief pursuant to the "safety valve provision" is informative. The Government contends that such relief will be unavailable here because firearms were located in Defendant's house and vehicle and because text messages on Defendant's phone could support a finding that he was a leader in the drug trafficking organization. Simply put, this Court is unpersuaded that relief from the mandatory minimum sentence would be unavailable if Defendant is convicted.

**(3) The history and characteristics of the person**

Now 23 years old, Defendant was born in Santa Fe and is a lifelong resident of New Mexico having lived the past 14 years in his Hernandez home. His longtime girlfriend, Crystal Bustamante, is now his fiancé and usually resides with him on weekends. Defendant has a high school education and documented history of gainful employment. Until his arrest, he had been employed for a year and a half with Los

Alamos National Laboratories as a custodian. Defendant has minimal savings (about $5,000) and absolutely no criminal record. Clearly, Defendant has strong community ties to this district. He is also in good physical and mental health, and there is no indication of any substance abuse issues. The Court acknowledges that these observations weigh heavily in Defendant's favor for release on conditions, especially because Defendant's relatively short foray – less than four month – into the sale of drugs seems out of character.

Indeed, all four witnesses called by Defendant spoke highly of his character for good work ethic, his reliability, and his active contributions to community sports activities. Yet all four, even his fiancé who had ample opportunity to observe, testified that they were totally unaware of Defendant's drug trafficking endeavors. The Court rejected the notion of placing Defendant in the third-party custody of his fiancé for precisely this reason. Instead, the Court would require placement at the halfway house if it finds conditions for release can be fashioned.

This Court also has significant concerns about Defendant's ties to Mexico that relate to both risk of nonappearance and danger to the community. Both of his parents and two of his brothers reside in Chihuahua, Mexico. This fact increases the risk of flight because his family in Mexico can offer him support if he chose to flee rather than face this criminal charge. As the Tenth Circuit has observed, a defendant's "present knowledge of the seriousness of the charges . . . and the resources available to her to abscond to Mexico should she choose to do so" tends to support a conclusion of "flight risk." *Cisneros*, 328 F.3d at 618. Thus, Defendant's ties to Mexico, even though he is an American citizen, weigh in favor of detention.

7

**(4) The nature and seriousness of the danger to the community**

Moreover, Defendant's ties to Mexico are also relevant to the danger to community analysis. One of those brothers – Jesus Ramos-Castillo – was removed to Mexico following service of his 42-month term of incarceration following a 2013 conviction for use of a telephone to facilitate a drug trafficking offense. *See United States v. Homer Varela, et al.,* CR 12-0128 JB at Doc. 573 (D.N.M. 2013). The cellular phone that Defendant stated he used for drug trafficking lists just seven contacts – two of which are Mexican phone numbers associated with contacts labeled "J" and "Je." The Government suspects that these numbers belong to Jesus and that he is the source for the heroin distributed by Defendant.

Counsel for Defendant contends that there is no evidence that her client is responsible for the phone's listing of these contacts or text messages to them. Defendant, however, acknowledged that he used that very phone to conduct drug trafficking during the May through September period he admits being involved in those activities. If Jesus was, in fact, Defendant's source for heroin from Mexico, there is also an increased danger to the community – Defendant could abscond to Mexico and join his brother in moving illegal drugs into the United States.

As the Government notes, even if Defendant remains in New Mexico to face the charge, economic pressures may tempt Defendant to engage in the trafficking of heroin – the loss of his job at the Labs, seizure of the $17,000 cash, the $20,000 he must owe to the source of the heroin that was seized, and minimal savings in reserve. Moreover, mounting legal fees to his retained counsel loom in the future. This Court would see this

as a lesser risk, however, because custodial jobs are readily available, and La Pasada Halfway House requires employment by its residents.

## CONCLUSION

The Court has given due consideration to the § 3142(g) factors and must recognize that the rebuttable presumption against conditions for release remains in play even though Defendant met his burden of production. The Court concludes that the Government has met its burden of showing flight risk by a preponderance of the evidence and danger to the community by clear and convincing evidence and finds that there are no combinations of conditions for release that will adequately address those concerns.

Wherefore,

**IT IS HEREBY ORDERED** that Defendant's Motion for Reconsideration of Detention Order *(Doc. 11)* is hereby **denied.**

_____
UNITED STATES MAGISTRATE JUDGE